STEPTOE, JUDGE:
Claimants brought this action for damage sustained to their real property allegedly caused by the negligent m aintenance of the drainage system on County Route 60/14, locally known as West Main Street, in St. Albans. This portion of County Route 60/14 is maintained by respondent in Kanawha County. The Court is of the opinion to make an award in this claim for the reasons more fully set forth below.
*253 This claim came on for hearing on the 2nd day of August, 2000, at which time the parties, counsel, and the Court[1] met at the property which is the subject matter of the claim for a view of the property and the surrounding terrain. The Court observed the following:
1. The property owned by the claimants is located on the north side of County Route 60/14 (a road commonly known as West Main Street).
2. The residence is a two-story structure with a flat front yard; a driveway on the east side of the house extends to the front of the garage located approximately four feet from the residence; the side yard on the west side of the residence slopes northerly; and there is a terraced back yard with a creek some thirty to forty feet to the rear of the back yard.
3. County Route 60/14 abuts the property at the front. There is a ditch line across the road to the south. It had a growth of grass and weeds.
4. There is a steep drop behind the house and the garage. From the area between the house and garage, one could look over the back yard, but it was not possible to walk down to the back yard due to the steep drop. There was dirt visible beneath the garage structure and the ground from the garage sloped steeply toward the back yard.
5. Where the driveway abuts onto County Route 60/14, there is a culvert under the driveway with slots at the top and a ditch from that culvert extends across the front of claimants’ property to a hollow at the west side of their property.
6. The Court also viewed a box culvert to the west side of claimants’ property which appeared to empty into a hollow-like area which was grown over with trees and other vegetation.
7. The Court then drove some one hundred yards east on County Route 60/14 stopping on the south side of the road in a parking area adjacent to a residence where the Court observed a box culvert some four feet square and at least six feet in depth. It had dirt and logs built up around it. The outlet pipe was described as being beneath the roadway crossing to the north side of the road and proceeding beneath a structure across the road. The flow of water is directed by the box culvert to the creek at the rear of the properties on the north side of the road.
8. There is a gently sloping hillside to the south of the box culvert and this hillside forms the main watershed to the box culvert.
9. The Court also observed the ditch line on the south side of the road which is the beginning of the ditch line that is located on the south side of the road and across from claimants’ property.
*254 10. The super-elevation of the road to the south side of the road was evident when looking west toward claimants’ property from the area of the box culvert area.
FACTS OF THE CLAIM
In October 1990, claimants purchased their residence for the amount of $60,000.00, less $7,000.00 for a manufactured home that was used as a trade-in. As described a bove, c laimants’ r esidence is s ituated o n t he n ortherly s ide o f C ounty Route 60/14. Behind the residence, there is a drop off and the property slopes thirty to forty feet toward a nearby creek. On the east side of the residence is a garage with a wooden floor. Between the residence and the garage, there had been an eight to ten feet high retaining wall, with a wire fence on top. This retaining wall was built on two footers from the base of the back yard. A second retaining wall is located behind the residence which wall supports part of the terraced back yard. At the time claimants’ purchased their home, an inspection was not conducted. However, several years later when claimants mortgaged their home, an appraisal was performed by a bank for financing purposes. No problems relating to stability of the residence or drainage were raised by the financing institution.
At this location, County Route 60/14 is a second priority road that traverses in a east-west direction. It is a two-lane road with double yellow lines indicating the center of the road surface and white lines indicating the edges of the pavement. On the south side of County Route 60/14 directly across from the claimant’s residence is a two acre hillside. The ditch line on the south side of the road has a three and one-half percent grade. A culvert is located on the southwest side of the road, across from the claimant’s residence and this culvert directs the flow of water from the ditch line beneath the roadway into a watershed area to the west of claimants’ property. This water eventually flows into the creek behind claimants’ property. The section of the road (about five-hundred feet or so) to the east of the claimant’s residence is super-elevated to the south, then curves and is super-elevated to the north.
Approximately seven hundred to eight hundred feet east of the claimant’s residence and on the south side of the road, there is an eight acre hollow that is approximately one-hundred-forty feet higher in elevation than the claimant’s residence. At the bottom of this hollow area on the south side of the road, respondent, as the former State Road Commission, installed a box culvert four feet square and seven to eight feet deep. About one foot of sediment has collected in the bottom of this culvert.
At the time claimants purchased the property, they were aware that the residence was situated in a low lying area, but they did not observe any water damage to the structure or evidence of water drainage problems on the property. According to claimant Patricia Ann Hart, the first signs of water problems occurred in February of 1991. Respondent was contacted about these problems and it conducted an investigation of the complaint. Since that time, Ms. Hart testified that respondent has been c ontacted t wice e ach ye ar to c lean t he dit ch o n t he s outh s ide o f t he r oad. *255 Claimant James Franklin Hart testified that since 1990, respondent has cleaned the ditch three times. However, the claimants continued to experience drainage problems.
The problems with water flowing onto claimants’ property continued to increase in nature until one occasion when the force of the water flowing across their driveway knocked down the retaining wall between the garage and the residence. Afterwards, the claimants began to video tape[2] their drainage problems. On two occasions, July 28, 1997 and June 12, 1998, the claimants video taped significant water flowing across the road from the ditch line on the south side onto their property. The video depicted water flowing in a southeast direction from the ditch on the south side of the road. On another occasion, the force of the water flowing across the road from the ditch line actually broke a basement window at the front of the house and flooded the basement. Mr. Hart described the water flow as “a waterfall where it swept under our porch.” A video tape from July 12, 2000, depicted vegetation and debris in the ditch line, which debris included such items as a log and a road sign.
As a result of this water drainage, the foundations of the residence and garage are deteriorating. According to the testimony of the claimants, prior to the drainage problems, the garage was supported adequately by its piers with the ground being level beneath the garage. The force of the water flowing across the driveway and beneath the garage has washed away about one-third of the dirt base. Approximately two-thirds of the garage floor now has dirt supporting it. The piers are the only support for the garage walls. Currently, the garage cannot be used to park vehicles, but is only safe enough for storage purposes. According to Bob Barnett, a contractor hired by claimants to provide an estimate for repair, the property has sustained damage in the amount of $23,500.00. He determined that the retaining wall between the residence and the garage should be replaced; that the foundations of the two structures should be repaired; and that there should be a retaining wall in the back yard to provide support for the slope. While the claimants had a homeowner’s insurance policy in effect at the time of the sustained damage, it did not provide coverage for the flood damage that has occurred.
The position of respondent is that it was not negligent in the maintenance of the drainage system on County Route 60/14. In late 1998 or early 1999, Maintenance Assistance David Charles Starcher and Highway Assistant Administrator James C. Markle went to the claimant’s residence to discuss the drainage problem with them. Mr. Starcher testified that he observed the ditch on the south side of the road to be seventy to eighty percent functional. The County Supervisor was contacted to removed the debris from the drain. About two weeks *256 after this meeting, respondent, on January 25, 1999, installed a twenty foot pipe, with a three inch slot across the top, in the claimant’s driveway. Several days later, an additional ten foot section of pipe was added to the outlet end of the pipe in order to expand the turning radius of the driveway. An eighteen to twenty-four inch deep ditch was dug from the end of the installed pipe, proceeding west, toward the end of the claimant’s property. Also, Mr. Starcher stated that respondent maintains the ditch on a three year cleaning cycle and its employees have mowed the vegetation in the southern ditch twice since the installation of the pipe and ditch. Since the completion of these projects, respondent has not received any further complaints from claimants regarding drainage problems on their property.
According to Dr. George Alan Hall, the Standards Manuals and Research Engineer and respondent’s drainage expert for this particular claim, a topographical map from the United States Geological Survey indicates the area in which claimants’ property is located on County Route 60/14 has a defined drainage area. Dr. Hall opined that the water problem being experienced by claimants actually was created by other landowners without respondent’s knowledge. From 1996 to 1998, the property on the southwest hillside for which the box culvert described herein before was timbered and the hollow had been filled. In addition, another landowner near the same hollow installed a twenty-four inch corrugated plastic pipe, which created a hole where a box culvert went under the road. Rock, soil and logs had been piled up around t his b ox c ulvert t hus preventing w ater from flowing in to t he b ox c ulvert. Limbs that were on the ground washed down into the ditch line and also impeded the flow of water to box culvert. Moreover, Dr. Hall believes that the super-elevation and steep grade of the road propels water from the ditch line on the south side of the road to cross the road and flow onto claimants’ property. Thus, the ditch line on the south side of the road was unable to carry storm water flow. The ditch line is now serving two drainage areas. According to Dr. Hall’s calculations, the drainage system is adequate in design for the south side of the road, but inadequate for the excess water generated by the hollow area. This situation has resulted in claimants as well as other landowners adjacent to the culvert to experience drainage problems on their properties. Further, Dr. Hall explained that the vegetation in the ditch line is normal and necessary because it prevents soil erosion by slowing the flow of the water. However, Dr. Hall admitted that the log and debris in the ditch line at the time of the severe water problems described by claimants could also impede the flow of water.
ANALYSIS AND CONCLUSIONS OF LAW
The Court has held that respondent has a duty to provide adequate drainage of surface water, and drainage devices must be maintained in a reasonable state of repair. Haught vs. Dept. of Highways, 13 Ct. Cl. 237 (1980). In claims of this nature, the Court w ill e xamine whether respondent negligently failed to protect a claimant’s property from foreseeable damage. Rogers vs. Div. of Highways, 21 Ct. *257 Cl. 97 (1996).
In this claim, the evidence establishes that respondent failed to maintain its drainage system on County Route 60/14 in Kanawha County in a reasonable state of repair. Apparently, another landowner had altered respondent’s drain located southeast of claimants’ residence and respondent asserts that it had no knowledge of those actions. However, the evidence establishes that respondent was informed of a drainage problem affecting claimants’ property in February 1990 and the severity of the problem increased in nature until 1998. The evidence further establishes that in response to complaints, respondent cleaned the ditchline three times since 1990, before taking the step of installing a drain pipe with a slot and creating a ditch along the north side of the road in January 1999 to alleviate the water problems being experienced by claimants. Moreover, the video tape evidence established that the ditch on the southern side of the road was full of debris, including a log and a road sign. This situation significantly contributed to water flowing in a “sheet” from the south side of the road onto claimants’ property. The Court is of the opinion that from 1990 to 1998, respondent’s employees had reason to know of a significant amount of water flowing across the road surface during rainy periods. Respondent’s employees travel on this road on a regular basis and should have been aware of the drainage problems in the area. There were sufficient complaints for respondent’s employees to investigate the area further for potential drainage problems. Respondent had constructive if not actual notice of a drainage problem in the area. While the Court is mindful that the clear-cutting of another property owner potentially contributed to the water flow problem, respondent is not excused from its failure to take notice of the formation of an obvious hazard occurring in this area.
When respondent’s employees inspected the area on several occasions, they apparently missed the altered box culvert to the east of claimants’ property and that debris w as n ot c leaned f rom t he dit chline. T he C ourt is o f t he o pinion that t he drainage system was not kept in a reasonable state of repair. Furthermore, respondent should have been more diligent in preventing other property owners from altering its drains. If the box culvert and the ditch line in the area had functioned properly, the effect of any excess water flowing onto claimants’ property would have minimized. As such, respondent failed to protect claimants’ property from excessive water flowing from the south side of the road. Thus the Court has reached the conclusion that the actions of respondent constituted negligence by which claimants may make a recovery in this claim.
Notwithstanding this finding of negligence on the part of respondent, the Court is not inclined to make an award in the amount of $23,500.00. The Court has determined that a portion of the recovery requested by claimants is for the betterment of their property. As such, the Court will make an award which places claimants in as good a position which they would have been but for the negligence of respondent. Therefore, the Court has determined that the amount of $23,500.00 be reduced to the *258 amount of $16,000.00, which the Court believes to be a fair and reasonable award for the loss sustained as a result of respondent’s negligence.
In accordance with the findings of fact and conclusions of law stated herein above, the Court is of the opinion to and does make an award to the claimants in the amount of $16,000.00 in this claim.
Award of $16,000.00.

 Two Judges of the Court were present for this view. On a subsequent date, the Honorable David M. Baker, Judge, viewed the property out of the presence of counsel and the parties.

 These video tapes were produced for viewing by the Court at the hearing.